First case for argument on Wednesday, November 19, 2025, case number 24-3261 from the Western District of Missouri, Michael Cunningham v. Col. Eric Olson, et al. Ms. Overcash Good morning, your honors. I may have pleased the court. My name is Alexandria Overcash, and I represent the appellants, who I will refer to as Olson for simplicity's sake. Your honors, in 2002, Michael Cunningham was convicted of possessing a controlled substance. The moment that he was convicted, he became a felon who lost certain rights under our Constitution. He now alleges that those rights were restored under Missouri Revised Statute Section 610.140, the expungement statute of certain criminal convictions. That's not so, your honors. Under Missouri's current scheme of expungement, his conviction did not restore his Second Amendment rights, which is at the core of each of his claims today. Thus, the appellants ask that this court reverse for two reasons. First, Cunningham lacks standing to assert the claims that he raises today. Second, even if he has standing to raise the claims, the appellants have immunity under sovereign immunity and qualified immunity. To my first point, your honors, this court has an independent duty to consider whether a plaintiff has standing to assert the claims that he raises. At the core of Cunningham's claims is the allegation that he has Second Amendment rights currently. But that's not so. Under the Constitution, every person has a right to bear arms. But if they're convicted, that right goes away and it's up to the state in order to restore that right. But that's not a standing issue, is it? I mean, he's had an injury. He can't possess a gun. That seems like an injury. In other words, isn't that about the merits of the constitutional claim and not about the jurisdictional issue of standing? Your honor, it goes through both in this case. They're both interplay related to one another. This injury that he asserts is that he can't bear a firearm. But that is traceable to only his own actions, the conviction that he had in 2002. Isn't it traceable to the law as well? The federal felon in possession law, the state felon in possession laws, isn't that also traceable to those laws? Your honor, the expungement statute allows certain convictions to be expunged and rights to be restored. But it's a matter of state grace of what convictions are restored and in what manner those are restored. Let me ask you about that. I'd like to get a better understanding of your position regarding the expungement statute. Let me ask this. Under Missouri law, can a person who is never convicted of a felony be charged and convicted of being a felon in possession? If they've never had a conviction or a felony conviction, then no, your honor. Right. So the reason I ask that question is section 610.140 provides that the effect of an expungement order shall be to restore such person to the status that he or she occupied prior to such arrests or convictions. And here's the key language. As if such events had never taken place. So if the events had never taken place under the law, why doesn't that undercut your interpretation of the statute? Because, your honor, in the provision that you're referring to, there's a key clause that says except as otherwise provided in the statute or in the section. That statute is referring to the fact that under Missouri law, records that are expunged, at least under 610.140, are not destroyed but rather merely closed. A record is closed in meaning that it can't be open to the public anymore. But that record may still be used for the administration of criminal justice. Was that the result of an amendment to the statute? And if so, did that amendment overturn Missouri Supreme Court case law that said otherwise? Yes and yes, your honor. In 2012, Missouri originally enacted its expungement statute. But it underwent a radical change in 2018 when Missouri expanded the amount of felonies that are eligible for expungement. But in doing so, by expanding it, it also caveated that and said these records are only going to be closed. They may still serve as the basis for a prior, as be considered a prior crime for the administration of criminal justice. They may still be used by prosecutors. They may still be used by people who are apprehending a defendant or a person on the street. So as I read that statutory amendment, it changed how the state treats the records. But I don't understand how that overrules the Missouri Supreme Court's rather clear order and holding that if you have an expunged felony, you cannot be convicted of felony possession. Well, by being closed, your honor, these records still exist. And under the statute, he still has a conviction for it. And that conviction... The statute says it's treated as if it never happened. Unless provided otherwise in the statute. And the statute clearly refers to other portions of Missouri law that say that a closed record may be used for the administration of criminal justice. As well as in 610.140, there's a provision that says that it may be considered a prior crime, which means that it can be used as the basis for another offense. And this is where I'm not completely following you. TVN, which is post-amendment of the statute, where it says essentially that it can be used for sentences and collateral consequences, but it can't be used to support a new crime. Under TVN, which I believe is the Missouri Court of Appeals decision, so not binding interpretation... Well, it's not binding on this court, but I'm not so sure it's not binding on Colonel Olson. In other words, state law cases, I mean, presumably they can't ignore state law cases. So you might be right about this court, I'm just not sure you're right about Colonel Olson. Your Honor, that case ignored the fact that it did not consider the other portions of the statute that say that the record is merely closed and available for administration of justice. But do you agree if we make it definitive? Like, if we disagree with you about the binding nature on Colonel Olson, that case is not very good for you. That that case probably means you lose, or at least that there may have been a failure to train here. No, Your Honor, and that goes to my second point. The officers are entitled, or Colonel Olson is entitled to immunity for both of these. You're referring to the qualified immunity part of the failure to train in Count 5. He did not have a duty to train his troopers, or the patrol, to violate the state statute. The state statute clearly says, the plain text does, that the record is still available for the administration of justice. Even if the State Court of Appeals said something entirely different and interprets it contrary to how you interpret it? TVN, I'm repeating that. Correct, Your Honor. No, Your Honor, he is bound by Missouri precedent, but that is not the correct... TVN does not foreclose this court from holding today that he did not, or he's entitled to qualified immunity. Because that case does not clearly establish that Missouri statute does not allow the officer to use the record for criminal justice purposes. How do you read the end of the TVN opinion? I have trouble following the logic at the end of it. Is there any way to read it that's favorable to you? Your Honor, I'm not sure exactly which portion you're referring to. You know when they quote it? The very end when they quote the nothing sentence? And by the way, it doesn't say criminal administration. It says, law enforcement agency, criminal justice, prosecuting circuit attorney, municipal, including uses prior offense violation or infraction. I bet you know the words. So it doesn't really say criminal administration. Aren't they saying at the end, I'll lead you a little bit, aren't they really saying at the end that it doesn't apply to courts for sure? And courts' use of it and use in courts? You think that's what the end is saying? Correct, Your Honor. That case is just limited to courts. Here we're looking at how officers... No, but that's why I was leading you. Because who goes to court? Prosecuting attorneys, circuit attorneys, all the people listed there go to court. Do you think, how can you reconcile your position with TVN at all? Well, binding the court or imposing an injunction on the court is different than imposing an injunction on anyone else. So under the statute, the prosecuting attorney or officers may use the records for purposes of criminal, administering the criminal justice. Well, the related question, there's, on your first point, just dispose of it, I think, quickly. Surely, they have standing to talk about, under Ex parte Young, the future, right? Well, no, Your Honor, because if the injury is still traceable to his own actions and not to the statute, then he doesn't have standing to assert the claim. Regardless of if he has standing, Ex parte Young does not apply here. The act that Colonel Olson does is merely administrative or ministerial. And this court's precedent is clear that if that's the case, then Ex parte Young does not apply. There are many cases in Missouri Supreme Court that say that State Highway Prose is a paramilitary organization, organized like the military, etc., etc. He has the rank of colonel, that's the highest. Can you really make the arguments you've made, he's just doing ministerial duty? Yes, Your Honor, because he has no discretion in enforcing the law. Cunningham is claiming that by maintaining and disclosing these records, that there is a violation of his constitutional rights. That's just not so. And even if that is true, the only act that Colonel Olson or the Missouri Highway Patrol would be doing is passing along that information. That itself is not, that is administrative or ministerial. He sets the policy for passing along the administration, right? I'm sorry, what was that, Your Honor? He sets the policy for passing along the administration, right? Your Honor, he has some authority to promulgate. He has full authority to regulate the passing along the information. Doesn't he, Counselor, you represent the State. Yes, Your Honor. Good. He does have authority to promulgate rules and regulations. However, in this situation, he did not promulgate a rule. The rule that he had was enforcing the statute as it is written. Missouri 610.140 is clear that the record is still available for use for the administration of criminal justice. So if I hear what you're saying, you're saying that he does have means of enforcement at his disposal because of his position, but he reads the statute differently. I'm sorry, Your Honor. Could you repeat your question? The Colonel does have means of enforcement of the statute at his disposal under Ex Parte Young. But you're saying that he reads the statute differently such that the expungement does not prevent prosecution of someone for felony possession. No, Your Honor. I do not think he has connection to authority to enforce the law. The task that he is doing does not qualify as that. There is no connection to the authority. The person that would be actually enforcing the statute in the use of this record would be someone else. Maybe the FBI as the lower court had held in one of its decisions. I don't understand that answer because they can't change the entry, right? The only person who can change the entry is somebody who has control over the repository. So how would the FBI help? Well, Your Honor, the FBI would be the one who is using it. It's not the repository that is actually violating the right. The repository is merely maintaining the record in it and providing information as it's required to do under the statute. Your Honors, I see that I am into my rebuttal time. If I may, I would like to reserve the remaining of my time for rebuttal. You certainly may. Thank you. Mr. Brown. Good morning, Your Honors. May it please the court. My name is Donald Brown and I'm here on behalf of the plaintiff in the underlying case, Michael Cunningham, today. Just kind of as an introduction, Your Honor, I am the proud son of a father who spent more than 30 years with the Federal Defender's Office for the Western District of Missouri. As a child, I was always taught growing up that the ideal American justice system should have been set up to where it's better to let ten guilty people walk free than to allow even one innocent person to be wrongfully arrested, charged, and convicted of a crime. What we're here today to do, Your Honor, or at least attempt to do, Your Honors, is to rectify a situation where the Missouri Highway Patrol and its superintendent have decided that not only is it okay to arrest felons who have had their felonies expunged for possession of a firearm, but that it's actually their obligation to do so. And that is notwithstanding and despite clear Missouri Supreme Court precedent. Well, the Supreme Court was before the amendment. Yes. Yes. Okay. So go slowly with me. What do you do with the last sentence? Nothing in this section. I'm certain you're familiar with it. How do you read that last sentence, and especially the TVN case? What does it mean? Well, the only way that a case gets to the courts, Your Honor, is if it's a criminal case, is if somebody's arrested for violation of a statute. The TVA case was very clear that it said that that last sentence meant what it said. And let me pull out that language, Your Honor. Except as otherwise provided under this section, the effect of such order shall be to fully restore the civil rights of such person to the status he or she occupied prior to such arrest, police trials, or convictions as if such event had never taken place. The TVN court Counsel? Yes. That's not the last sentence I'm talking about. Okay. Could you please I'm talking about the last sentence of 610.140.12. That nothing in this section shall be construed to limit or impair in any way the subsequent use of any record expunged under this section of any arrests, courts, findings of guilt by a law enforcement agent criminal justice system, including its use as a prior offense, violation, or infraction. And I think that's what they meant. They could. I think it's okay to use the prior felonies when it comes time to sentence and when it comes time to set the punishment for subsequent crimes. What they can't do is use the subsequent expunged felony as a basis for the unlawful possession of a firearm statute. The TVN case is 100% clear on that. And that was post-amendment of the statute. As a matter of fact, the TVN court, they cite state versus merit, and not as dicta as the state of Missouri is saying, but as a holding. That, again, chapter or the expungement cannot be used for purposes of the 571.070. Okay. The word sentence, you said for sentencing. And I think that is paramount what the legislature is thinking. But the word sentencing is not there in the sentence that you and I just read. Yep. So what else does it cover besides sentencing? I don't know what it could possibly cover, Your Honor. Let's take the facts of this case. Stop by the side of the road. That is used by a criminal law enforcement agency, a use of a record expunged as a prior offense, violation, or infraction. But how did they use it? And that's the question that TVN poses, Your Honor. The question is not whether or not theoretically there was a prior felony out there, and whether or not it's been expunged. I guess the expungement is central at issue, but the question is what can the law enforcement do with that expungement? And the TVN court said, or at least they expressly upheld or agreed with the state versus merit court that, and I'll try my best to quote it, that 571.070 would not apply to expunged felony convictions. Counsel, I wonder if there isn't another clue in the text of the statute that we could look at to help us answer this question. What does the statute say about the treatment of concealed carry and the use of expunged convictions to deny permits for concealed carry? And my understanding is that it can be, well, I don't know how it can be used, Your Honor, because I don't believe Missouri even requires really anything for concealed carry. My understanding is that the statute says you cannot use expunged convictions to deny permits for concealed carry. If that's true, then how could it possibly be true that you could be convicted of being a felon in possession if the state's given you a license to carry? I don't know, and I don't think you can be. They seem to be contradictory. Yes, I would agree. I mean, I don't think, despite what the attorney general's office in the state of Missouri and the Missouri Highway Patrol want this court to believe, there's no interpretation or reading of the expungement statute, of the unlawful carrying of a firearm statute, and of the case law that can support the state's position on this. What about qualified immunity, though, counsel? Here we are arguing about this last sentence, and the end of TVN talks like it's about courts. It says the courts use. The trial court had an obligation to use. They have several sentences that talk that way. Is this a case where qualified immunity is in order? I don't think so, Your Honor, because what we have here is a clear failure to train, at least in our opinion. And as you probably could tell in our briefing, we kind of briefed the issue as the superintendent failed to train his officers on how to disseminate what that designation of clothes pursuant to 610 meant on the computer screen that the officer sees in the field and all of that stuff. But in actuality, the more I have thought about this in preparing for this oral argument, Your Honors, it's really quite simple. If the superintendent of the Missouri Highway Patrol's position is that an expunged prior felony is meaningless and they can still be arrested and charged for unlawful use or unlawful carrying of a firearm post-expungement, then there's an obvious failure to train because that simply is not the law. And I guess it requires for the three of you to decide that we are correct on that. But assuming for the sake of argument that we're correct and expunged felonies cannot be used as a basis for subsequent unlawful carry, the unlawful carry statute, there's been a clear failure to train here, and that's under the Parrish v. Ball case, Your Honor. And that case essentially says that a supervisor's failure to train can subject him to Section 1983 liability where the failure to train amounts to a deliberate indifference to the rights of persons whom the police come in contact with. Might that be a more difficult question, a summary judgment, than it is here on a motion to dismiss where we have to accept all of the well-planned facts as true? Yes. I mean, we may ultimately be back here, Your Honors, if the facts don't bear out what we're alleging. Yes, there may be a summary judgment or argument issue on that, and that may well be coming down the line. But again, for purposes of a motion to dismiss our second amended complaint, taking all of our factual allegations as true, and again, taking the position of the Missouri Highway State Patrol, I think that there is a failure to train here. I want to ask about TBN. Minnesota has a, my home state has a unified appellate system. Missouri has a split one among different geographical districts. You have one Missouri Court of Appeals decision. Is your view that, I suspect the answer is yes, but I want to know why. Colonel Olson was bound by TBN? Because TBN, the defendant in that case was the Missouri State Highway Patrol. Now, I can't sit here today and tell you that I know the exact dates of Mr. Olson's tenure as the superintendent of Missouri Highway Patrol. But I do know the case was decided in 2019. So I don't want to tell you, but I'm assuming that either he was highly ranked with the Missouri Highway Patrol at the time, or he was the superintendent at the time. I'm asking a slightly different question. I'm asking like, for instance, an Eighth Circuit decision is not binding in the Ninth Circuit, right? And so a supervisor in the Ninth Circuit doesn't have to follow an Eighth Circuit opinion. Is the same true here, or is it, or once this is decided, this is binding on Colonel Olson? I think once it's decided, it's binding on him. I mean, it was a Western District Court of Appeals case from the state of Missouri. And then, obviously, Missouri is within the Eighth Circuit. If this court should decide— Well, counsel, even simpler point, Colonel Olson's headquarters are located in the Western District, for starters. Yes, sir. For starters, and the Missouri Constitution says there's one Court of Appeals. Yes, sir. I know they don't operate that way, but the Constitution says that there is one Court of Appeals. Yes, and I would agree with that. Well, but the more accurate point is, and, of course, we've talked about it several ways, why does the TVN then say, but see merit? After they have the discussion that you and I were talking about, they see, but see merit. You know what I'm talking about, the end of TVN? I am, and I can't reconcile that. Court of Appeals, usually when they say, but see a Supreme Court case, they don't do that. That is a red flag. We think something's wrong here. Yes. Okay. Are they saying they think merit's wrong? No, I think what they're doing is calling attention to the fact that they are not striking down the constitutionality of the 571.010 itself. The case of state versus merit is the plaintiff in that case was actually trying to have the entire 571.070 thrown out, because I guess Missouri in 2015, or at the time, had amended its state constitution, relaxing the carry rights of gun owners. So he had filed suit against, or he had been arrested and challenged the very constitutionality of the wrongful carry statute, because he didn't think it applied after Missouri had changed its constitution. But I'm guessing, and I hate to guess, Your Honor, but I'm guessing that the court in TVN was merely wanting to make it clear that they are not stating that 571.070 was no longer good law, only that an expunged felony cannot be used as a basis for conviction under it. Thank you, Your Honor. And then going back to, I do want to touch a little bit on the sovereign immunity issue, Your Honors. I think really the only element of that that is in question here, and that would be as to count one remaining in our second amendment complaint against Mr. Olson as the superintendent or as the entity itself. I mean, there's no question that the petition claims an ongoing violation of law. If the Missouri Highway Patrol's position stands, then there is no doubt that more people are going to be stopped and arrested with expunged felonies when they shouldn't be. Well, let me ask you this. So a lot of the lower court discussion, the briefing discussion, was about the accuracy. These notations are actually accurate. It says that it's been closed, which is the exact language that the statute uses. And so therefore, Colonel Olson and the repository did nothing wrong. What's your response to that? I think they did do something wrong because they know or they should know, again, this all hinges back to what they should know. They should know that the expunged records should not be a basis for subsequent carrying of the firearm. And then they disseminate the records, which I'm not saying they're not entitled to do, but all they do is label them as closed. That's what the statute tells them to do, right? Yes, but there is nothing that instructs the field trooper or anybody else as to what to do with that. So that gets to the point that opposing counsel was making. She said, well, you need to sue the FBI or you need to sue the Sheriff's Department or you need to sue somebody else, which is what you're doing with your negligent training. But maybe you have the wrong defendant with regard to Colonel Olson. I don't think so because it's or at least we feel that Missouri state law is very clear that the Missouri Highway Patrol is the ones that are in charge of the records. If there is a problem, they're the ones that need to fix it. Let me ask you this. What relief would you seek from Colonel Olson? From Colonel Olson, on the count one on the injunctive relief, Your Honor, what we're asking for is that, A, he needs to make sure that his field troopers are trained so that they know that expunged felonies cannot be used as the basis for arresting. The problem is you're suing the wrong defendant then. I mean, you want action from the field officers. You don't want action from him, right? I mean, the local sheriffs and all the people who are relying on it. And that gets us to, we tried that, Your Honor, but that gets us to a situation where the district court told us that we couldn't sue the trooper because she had arguable probable cause for qualified immunity purposes because she relied on the records on her computer. Well, then I'm getting at a slightly different point, which is I thought you were going to say, honestly, well, they didn't remove the close notation and say it's been expunged. But then, of course, the problem with that is that's not what the statute says. And so I'm just trying to figure out whether you have the right defendant. And he may be in charge of the repository, but I'm not sure the repository, you've alleged that the repository has done anything wrong. They have by not clarifying the fact that they are expunged. Oh, my time's up. May I answer that question? As long as Judge Strauss wants to. But how do they do that? That's what I'm asking you. How do they do that other than violating the statute? Again, I would go back to it's better for guilty people to go free than for innocent people to be wrongfully arrested. Those records do not have to be in the repository. They can't be destroyed, but they don't have to show up. Expunged records do not have to show up when the officer makes an inquiry in the field. But that's addressed to the legislature. The legislature is the one that made the decision for the repository and for it to stay closed. That's not a decision for Colonel Olson. I think it is, Your Honor, because Chapter 43 clearly states that it's up to the Missouri Highway Patrol on the forms that it provides to say what records get reported to the repository and the manner in which they're done. So I do think that the Missouri Highway Patrol and the superintendent do have that authority under Chapter 43. Thank you for your argument. Thank you. Ms. Overkash. Your Honor, there's three points on rebuttal. First, opposing counsel conflates language in 610.140. He says that the prior crime language equals only that the offense can be used for sentencing purposes. The statute plainly says in subsection 9 language about sentencing. The legislature clearly meant something different when it said prior crime. Thus, it could be used as the basis for a further offense. Second, to Judge Graz's question regarding concealed permits, subsection 10 of 610.140 and then paragraph 2 directly talks about the concealed carry permit statute. And in that subsection, it says that the defendant must continue to disclose his prior conviction to agencies when applying for a concealed license permit. He would have to do it himself. Thus, why could Colonel Olson not disclose for other purposes under the administration of Justice Point? Why would the state give a concealed carry permit to someone who is guilty of a felony for possession of a firearm as a former felon? Your Honor, I don't think it would. But the fact is that he would have to disclose that for consideration when applying for a concealed permit. Nothing in 610.140 entitles him to the concealed carry permit. He would have to apply under a different statute and secure that elsewhere. Third, to Judge Benton's question regarding TVN, you're correct. The court did say use but see to merit calling into question the merit of it. If we're going to ride that horse, the Supreme Court did not take transfer in this case. Made no notations, didn't disclose any votes or do anything. And I know that you can't read anything into denial as a transfer. But still, with a but see in there, they didn't take transfer. Correct, Your Honor. But it may have just been deferring the issue to later when this issue percolates further in the appellate courts and more courts have commented on whether this statute requires expungement and the ability of these offenses to continue to be used for further offenses. And finally, this statute is not meaningless as opposing counsel contends. Section 610.140 merely limits the use of or limits the effect of expungement. It still gives him expungement in the sense of it allows him to apply for employment elsewhere or for other rights. But it does not entitle him to his constitutional rights, Second Amendment. Thus, we ask that you reverse. Thank you. I thank both counsel for your arguments in this case. Case 24-3261 is submitted for decision by the court.